JOHN G. LEFFINGWELL v. ROBERT KIERSTED ET AL., BOARD OF TRUSTEES OF THE NEWARK PAID FIRE DEPARTMENT PENSION FUND.

JOHN H. HIGGINSON v. ROBERT KIERSTED ET AL., BOARD OF TRUSTEES OF THE NEWARK PAID FIRE DEPARTMENT PENSION FUND.

JAMES T. GLENNON v. ROBERT KIERSTED ET AL., BOARD OF TRUSTEES OF THE NEWARK PAID FIRE DEPARTMENT PENSION FUND.

Submitted December 11, 1906—Decided February 25, 1907.

A lineman, a watchman and a veterinary surgeon, who are members of the Newark paid fire department, are entitled to membership in the corporate association organized by the department under the provisions of the statute of 1902 (*Pamph. L.,* p. 793) for the purpose of providing and maintaining a fund to pension firemen and their families.

This is a rule to show cause why a writ of *mandamus* should not issue, directed to the board of trustees of the Newark paid fire department pension fund, commanding them to replace

the names of the relators upon the roll of the members of the Newark paid fire department pension fund and compelling them to receive from the petitioners the assessments which are levied upon the members of the fund.

There are three distinct rules applied for by three persons occupying three 'different positions in the Newark fire department.

Before Justices FORT, PITNEY and REED.

For the relators, *McCarter & English*.

For the respondents, *W. H. Francis*.

The opinion of the court was delivered by

REED, J.  The three cases raise a single question.  Each of the relators claim a right to membership in an association organized as the Newark paid fire department pension fund. The association was organized under the provisions of an act concerning paid fire departments in cities of the first class, and for the relief of members thereof and their families. *Pamph. L.* 1902, *p.* 793.

Under the provisions of this act, the Newark fire department organized an association and appointed five trustees thereof.  These trustees have refused to recognize the three relators as members of the corporation, and have dropped their names from the roll.  The writs asked for are to restore these three relators to their position upon the roll as members of the corporation entitled to the benefits of the pension fund.

The allowance of the writs is resisted upon the ground that these persons are not entitled to share in the benefit fund. The insistence is that none but firemen are entitled to share in the fund; and firemen are defined by the defendants to be those men belonging to the department who actually engage in the extinguishment of fires.

The three relators are connected with the department in the following manner:  Leffingwell is a lineman in the fire department, and has been such since 1888.  There are four line-

men in the service of the department. It is their duty to attend to the telegraph alarm system of the department at all times, and to be ready to proceed to any section of the circuit to repair defects.

Glennon, another relator, is a veterinary surgeon of the department, and has been such since 1900. All the horses of the department are in his personal charge. He has an alarm in his residence, and must respond to such alarms and be present at considerable fires.

The relator Higginson has been for eight years night watchman, to watch over the department headquarters located at Halsey and Academy streets, Newark. The three are regularly appointed members of the fire department.

The act of 1902 (*Pamph. L., p.* 793), in granting the power to organize a corporation, declares that in any city of the first class, which has a fully paid fire department, it shall be lawful for the members of such department to associate themselves together as a corporation for the purpose of providing and maintaining a fund to pension firemen and their families. In every succeeding section of the act, those interested in the association are referred to as "members of the fire department." Thus in the second section it is provided that if two-thirds of the delegates selected from the several fire companies to attend a meeting to consider the formation of a corporation shall adopt a resolution to that effect, they shall recommend to the board of fire commissioners four "members of such fire department" as trustees.

Section 3 provides that the pension fund shall be under the control of the board of trustees, consisting of the chief engineer of the fire department and "four members thereof."

Section 10, paragraph 2, provides that the pension fund shall be sustained by fines, penalties and forfeitures seized upon and collected from any officer or "member of such fire department," and by paragraph 3 of the same section by rewards, fees, gifts or emoluments paid for extra services rendered by any officer or "member of such fire department."

Section 11, paragraph 2, provides that if any "member of such department" shall become incapacitated in the discharge

of his duties he shall be entitled to receive a pension. Paragraph 3 of the same section declares that any "member of such department" who shall serve for twenty years continuously or otherwise, who shall become incapacitated either mentally or physically, from illness or injury incurred in the performance of his duties as a "member of such department," &c., shall be retired upon a pension. Paragraphs 4 and 5 provide that when any "member of such department" shall die, having served a less period than five years, his widow shall receive a pension, and when a member shall have served five years his widow shall receive a different amount as a pension. Paragraph 6 provides that when any "member of such department" shall die after being retired on a pension, his widow shall receive a pension. Paragraph 7 provides that in either of the above cases, if such member leave no widow, then certain consequences shall follow.

Indeed, as already remarked, in each section and paragraph of the act, except the first section, those who are to be participants in the pension scheme are mentioned as members of the fire department.

In the first section the purpose of the corporation is mentioned as being for the providing and maintaining of a fund to pension firemen and their families. The meaning of the word "firemen" in that section must be regarded as synonymous with members of the fire department. This meaning seems to be clear from the repeated use of the latter expression, not only in the body of the act, but in its title.

In *Wheeler* v. *Board of Fire Commissioners,* 46 *La. Ann.* 731, a veterinary surgeon was held to be an officer of a fire department.

In *People* v. *Ennis,* 7 *N. Y. Supr. Ct.* 630, a telegraph operator was held to be a member of the force for extinguishing fires, and to be protected from removal.

In *People* v. *Wurster,* 35 *N. Y. Supr. Ct.* 86, it was held that a surgeon, whose duty it was to attend sick members and to attend fire alarms, was a member of the force for extinguishing fires.

It is again insisted on the part of the defendants that only

members of a fire company are included among the intended beneficiaries. This insistence is put upon that section in the act which provides for the selection of delegates from each company to attend a meeting to determine whether a corporation shall be formed, and if so, to recommend trustees. This provision, however, is merely a scheme for the creation of a corporation. It is not significant in fixing the class of persons who are to be pensioners under the scheme. If membership of a company is to be the test by which membership of the class is to be determined, such a test might exclude the chief engineer or his assistants, and might include a surgeon attached to a particular company.

So, also, the test sought to be applied which limits the class to those engaged in a physical struggle with flames, and who so encounter exceptional dangers in the service of the department, is one not easily applied. The driver who puts his engine in position and the engineer who operates it, as a rule, do not encounter such special dangers as menace the actual fire-fighters.

Indeed, there seems no reason to be drawn from the language of the statute in which the class of beneficiaries can be held to be more restricted than a class composed of all members of the fire department, and that these relators are members of such department seems to be not a matter for dispute.

Nor is there anything in the case of *Scott* v. *Jersey City,* 39 *Vroom* 687, which in any way controls or even assists in the construction of the present statute. In that case the plaintiff brought an action to recover a pension which she claimed was due to her upon the death of her husband from an injury received while serving as a hoseman in the fire department of Jersey City. The deceased was permanently employed in the fire department, and was killed by a fall from a trolley car while on his way home to supper. It was held that his widow had no right of action. The widow in that case claimed a pension by force of the terms of the act of 1897. *Pamph. L., p.* 263. This act provides that if any officer or man permanently employed in any fire-department

shall be fatally injured while in performance of or attempting to discharge his duties, his widow shall be allowed a pension. The question was not whether he was a member of the fire department, and as such member he, by his death, conferred upon his widow a right to a pension, but the query was whether his death occurred in circumstances which by the statute gave a right to a pension. The question was whether his death, occurring by reason of a fall from a trolley car while going to his home, occurred (he was fatally injured), in the statutory sense, in the discharge of his duties as an employe of the fire department. It was held that the language of section 2 was ambiguous, and might mean either that the deceased must have been engaged in extinguishing a fire, or it might mean that the deceased might have been engaged in one of the regular duties prescribed by the rules of the fire department, including his visit to and from home for meals during the hours fixed for that purpose. In view of this equivocal language contained in section 2, the court invoked the language of section 1, to the effect that it should be lawful for a municipal board having charge of fire departments to relieve from service any officer or man permanently employed whose *duties required active service in the extinguishment of fires* who shall have become incapacitated either mentally or physically from the performance of such duties, when such incapacity shall be the result of injuries received or sickness contracted in the discharge of or attempting to *discharge such duties.* It was provided that a person so disabled was to have the same pension as would his widow under the second section in case he was killed. It was held that this section, read in connection with section 2, exhibited an intention that disability or death should occur in active service in the extinguishment of fires.

It is perceived that the structure of the statute thus construed differs from the statute now under consideration in the important particular that in the latter there is nothing to indicate either that death or disability must occur in active service in the extinguishment of fires, or that the right to membership is dependent on this class of service.

We are of the opinion that the relators are each entitled to a peremptory writ.

In case the defendants desire to review this order of the court, we will put the record in a shape to permit a writ of error to be taken.